IN THE DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**, ) | |
| ) | CASE NUMBER: |
| Plaintiff, ) | |
| ) | 21-cr-437-APM |
| v. ) | |
| ) | |
| **MARK GRODS**, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## SENTENCING MEMORANDUM OF
## DEFENDANT MARK GRODS

Defendant, through counsel, submits his Sentencing Memorandum for the consideration of the Court. The undersigned attorney joins the recommendation of the Government insofar as the Government recommends that the Court Order Mr. Grods to serve a sentence of three years of supervised probation, pay restitution of $2,000, and pay a $200 mandatory special assessment. Mr. Grods does not contest the recommendation that he perform 120 hours of community service as recommended by the Government. The primary disagreement between Mr. Grods and the Government is the Government's suggestion that Mr. Grods spend the four months of his probation under home confinement. The defense suggests that home confinement is not necessary given the way Mr. Grods has comported himself during the pendency of this matter and the fact that Mr. Grods took responsibility

1

for his role in the matter quickly and publicly. Between the imposition of the conditions of pretrial release for Mr. Grods and today, Mr. Grods has abided by all terms and conditions imposed by the Court, has made himself available to the Government as needed, and his led an otherwise law-abiding life. Mr. Grods believes that other similarly situated, cooperating co-defendants have not required home confinement, and he asks the Court to similarly refrain from imposing home confinement in his case.

If the Court deems a period of home confinement is necessary, the defense joins the Government in asking the Court to permit Mr. Grods to leave his home for employment, medical, and religious purposes.

The defense argues that a sentence of probation without home confinement (or, in the alternative, a sentence of probation with a period of home confinement) would be sufficient, but not greater than necessary to fulfill the congressional established goals of sentencing. See 18 U.S.C. §3553(a).

This Memorandum seeks to provide additional information about this case relevant to the decisions of the Court in sentencing the Defendant, to provide information about the Defendant himself, and to make recommendations regarding sentencing.

To begin by providing some background into Mr. Grods and who he truly is, Mr. Grods has always been a good worker and a supporter of his family. Mr. Grods

is a man of faith who frequently makes time for prayer. The Defendant is a husband and father. He is also the son of a disabled father, who relies on him for assistance. Mr. Grods is an honorably discharged veteran who served our country and who takes great pride in his service.

Mr. Grods first became involved with the Oath Keepers when several members showed up in Florida, where Mr. Grods lived at the time, to assist with hurricane relief. Thereafter, Mr. Grods engaged with others to assist with other natural disaster relief to include both hurricane and tornado relief. In this individual case, Mr. Grods was not recruited into the group to join a reactionary, political organization. He initially thought he joined a community assistance group. The defense concedes that Mr. Grods past lifetime of lawful behavior and dedication to community show that he should have exercised better judgment on January 6, 2021. However, even a cursory review of Mr. Grods' life shows how extremely out of character his actions that day truly were.

I. **Determining a Sentence After *United State v. Booker*.**

Section 3553(a) has been described in *United States v. Booker*, 543 U.S. 220 (2005) as containing "factors" to consider during sentencing. To be sure, one such factor to be considered is the recommended sentence of the United States Sentencing Guidelines. Booker describes both a sentencing "mandate" and

"factors" to be considered in fulfilling that mandate. The sentencing mandate is an overriding principle that limits the sentence a court may impose.

    A.    <u>The §3553(a) Sentencing Mandate</u>

The Mandate imposed by Booker and §3553(a) is that a District Court shall impose a sentence "sufficient, but not greater than necessary," to comply with the four purposes of sentencing found in §3553:

    (a)    Retribution (to reflect the seriousness of the offense, to promote respect for the law, and to provide a just punishment);

    (b)    Deterrence (to defer similarly situated individuals from engaging in similar or substantially similar conduct);

    (c)    Protection of the Public (to protect the public from further criminal activity); and

    (d)    Rehabilitation (to provide defendants with needed training, medical / psychological care, or other correctional treatment in the most effective manner). 18 U.S.C. §1553(a)(2).

    B.    <u>The §3553(a) Factors to be Considered</u>

Section 3553(a)(2) requires a trial court to consider several enumerated factors when crafting its sentence. The defense discusses these factors below.

(1)     The sentence imposed should reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense.

4

The events of January 6, 2021, are without modern analog.  However, the Defense argues that the actions of each individual must be distilled from the actions of the group as a whole when crafting the sentence for each individual. The Defense concedes that the activities of January 6, 2021 constituted an extremely serious set of offenses. As well, the defense does not contest the seriousness of the counts of Conspiracy and Obstruction of an Official Proceeding to which Mr. Grods pleaded guilty. Mr. Grods' actions on January 6, 2021, are discussed in depth in paragraphs 18 through 30 of the Presentence Investigation Report (Doc. 33 Pages 8-9). In addition, the Defense believes that the Government's summary of the events attributable to Mr. Grods is a fair and accurate description of what happened. (Doc. 36, Pages 2-8) It is noted that Mr. Grods' is described as entering the building at around 3:21 pm and exiting at around 3:25 pm. Mr. Grods remained inside the building less than 3 minutes total, but this does not mitigate the entry itself. Mr. Grods entered the Capital, walked in a clockwise circle with a diameter appearing to be about 5 meters or less, and then exited the building.

Mr. Grods' conduct is easily distinguished from several other defendants. Mr. Grods approached the Capital with several members of the "Oath Keepers," entered a "stack formation" with others, and briefly entered the building. However, while others wielded shields, bear spray, or other weapons, Mr. Grods carried first aid supplies with him. While other co-defendants continued inside the Capital, Mr.

5

Grods turned and exited the building, waiting at the base of the area near a hedge for his co-defendants. It is worth noting that he waited in an area well away from where the entry transpired. Mr. Grods refused to bring firearms into the District of Columbia. Mr. Grods refused to remain in the building for the same length of time as his co-defendants. Mr. Grods later abandoned the firearms he brought to Virginia with his co-defendant in Arab, Alabama. On the instruction of "higher-ups" in the "Oath Keeper" organization, Mr. Grods deleted certain messages from his phone.

      Mr. Grods did not break any property, did not deface any property, and did not search or explore the Capital. Mr. Grods did not harm any third party, especially not law enforcement officers or other officials lawfully within the Capital.

      Mr. Grods has discontinued his affiliation with the "Oath Keepers" and has avoided making any incendiary posts or public comments about the case. As discussed below, almost immediately after the events of January 6, 2021, Mr. Grods acknowledged his error and abandoned the "Oath Keepers" in favor of his country.

(2)    The sentence imposed should adequately deter criminal conduct.

      Here, Mr. Grods participated in an event unprecedented in recent memory. However, he immediately accepted responsibility, renounced his prior affiliation

with the "Oath Keepers," and cooperated. Along with probation, by accepting responsibility and entering his plea, Mr. Grods loses his right to vote, his right to keep and bear arms, and eligibility for certain federal programs. In sum, a sentence of probation for three years – together with the lost rights and privileges described above – is sufficient to promote respect for the law and adequately deter others from carrying out criminal conduct of this nature.

(3)  The sentence imposed should protect the public from future crimes of the Defendant.

Before this incident, Mr. Grods led an exemplary life as a law-abiding citizen, family man, and veteran. Mr. Grods one-time lapse in judgment was an extreme deviation from his character and demeanor before and since. The Defense respectfully suggests that Mr. Grods poses no threat to the public in the form of future crime, and the proposed sentence is sufficient to meet this area for inquiry.

(4)  The sentence imposed should provide the Defendant with necessary training, medical care, and correctional treatment in the most efficient manner.

Mr. Grods urges the Court to consider his lack of prior record, immediate cooperation, and his demeanor since January 7, 2021, when setting the sentence. The defense argues that Mr. Grods can receive any necessary training and correctional treatment through a period of probation.

Mr. Grods was the second "Oath Keeper" to accept responsibility and enter a plea of guilty in this case. Before entering his plea of guilty, Mr. Grods debriefed with the Government several times, and he waived Grand Jury indictment and entered his plea based on a filed Information. As noted in the Government's Sentencing Memorandum (Doc. 36), Mr. Grods debriefed extensively, testified before the Grand Jury, and prepared for trial testimony which was ultimately unnecessary. Also, as the Government notes in its Sentencing Memorandum, Mr. Grods immediately began communicating with the Government as early as March 2021 (Doc. 36, Page 12-13). In those discussions, he implicated himself and acknowledged his involvement before the full nature of his involvement had been discovered by the Government.

Mr. Grods allowed his cooperation to be made public from the day of his plea. As the Government mentions in its Sentencing Memorandum, this involved some risk to himself. Indeed, almost immediately after he entered his plea, strange vehicles were parked around Mr. Grods' residence. Some proved to be news media, but others raised concerns to both the defense and the Government. The defense is extremely grateful for the Government's rapid response to these occurrences. In addition, co-defendants and their families "called out" Mr. Grods online which served to frighten and harass Mr. Grods.

In short, the Defense agrees with the Government that a substantial reduction under United States Sentencing Guidelines §5K1.1 is appropriate.

## II. Statutory Penalties

The Defendant faces up to five years of imprisonment for conspiracy, and up to 20 years of imprisonment for Obstructing an Official Proceeding, together with \ three years of supervised release and fines up to $250,000. Restitution and a special assessment are also statutory provisions of punishment.

## III. Sentencing Guidelines

For purposes of this Memorandum, the defense adopts the calculation and discussion of the Government as though fully reproduced herein. (Doc. 36, Pages 9-11). In short, we agree that the following Sentencing Guidelines sections apply to both counts:

| U.S.S.G | | |
|---|---|---|
| U.S.S.G §2J1.2 | Base Offense Level | 14 |
| U.S.S.G §2J1.2(b)(3)(C) | Extensive Scope, Planning, Prep. | +2 |
| U.S.S.G §3C1.1 | Obstruction (Destroying Docs.) | +2 |
| U.S.S.G §3C1.1 | Minor Role | -2 |
| U.S.S.G §3E1.1(a) | Acceptance of Responsibility | -3 |
| | TOTAL: | 13 |

At level 13, the recommended sentencing range for a defendant with no prior criminal record would be 12 to 18 months of incarceration.

In addition, the Defendant agrees that a downward departure under U.S.S.G §5K1.1 is appropriate as called for by the Government. (Doc. 36, Pages 11-14)

This would, if adopted by the Court, call for a sentencing level of 9, and a sentencing range of 4 to 10 months, possibly on home confinement. However, the Defendant urges that the timeliness and extent of his cooperation, and the threats he faced after cooperating all suggest that the Court determine that an appropriate sentence does not require a period of home confinement.

### IV.  Restitution & Mandatory Special Assessment

The Defendant agreed, as part of his plea agreement, to restitution of $2,000 and a mandatory special assessment of $200. Mr. Grods will be prepared to pay the $2,200 in full on his date of sentencing.

### V.  Conclusion

The Defendant asks the Court impose a sentence of three years of probation (without home detention), 120 hours of community service, $2,000 in restitution, and a $200 special assessment. If the Court determines that a term of home detention is required, the defense joins the Government's recommendation that Mr. Grods be free to leave for employment, medical, and religious purposes.

Respectfully submitted.

DATED:  December 4, 2024             MARK GRODS, Defendant

BY:   /s/  BRIAN J. LOCKWOOD, LLC
Brian J. Lockwood  (lockb9131)
Law Office of Brian J. Lockwood, LLC
1111 Dauphin Street
Mobile, AL 36604 / (251) 434-5754
brian.lockwood@ymail.com

## CERTIFICATE OF SERVICE

      The undersigned certifies that on the date shown on the CM/ECF file stamp, above, he filed this document using the CM/CRF system, which automatically serves all parties of record.

                                        /s/ BRIAN J. LOCKWOOD